IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00857-MSK-CBS

PATRICIA RODRIGUEZ,

       Plaintiff,

v.

WET INK, LLC d/b/a ALPHAGRAPHICS a/k/a WET INK, CORPORATION,

       Defendant.

---

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND SETTING FINAL PRETRIAL CONFERENCE**

---

       **THIS MATTER** comes before the Court on a Motion for Summary Judgment **(#43)** filed by Defendant Wet Ink, LLC d/b/a AlphaGraphics a/k/a Wet Ink, Corporation's ("Wet Ink"), to which Plaintiff Patricia Rodriguez responded **(#45)**, and Wet Ink replied **(#46)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

       The Court exercises its inherent authority to determine its jurisdiction, *see United States v. Ruiz*, 536 U.S. 622, 628 (2002), and, if jurisdiction is found, exercises it pursuant to 28 U.S.C. § 1331.

### II. Issue Presented

       In this action, Ms. Rodriguez asserts claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for sexual harassment, sex discrimination, national origin/ancestry discrimination, and retaliation. Wet Ink moves for summary judgment on two related grounds: (i) that this Court does not have subject matter jurisdiction over Ms.

Rodriguez's claims because the parties entered into a binding arbitration agreement; and (ii) Ms. Rodriguez's claims are barred by the relevant statute of limitations.  Ms. Rodriguez responds that she should be entitled to discovery regarding the origin and circumstances of the arbitration agreement because this Court has jurisdiction to determine threshold issue regarding arbitration agreements, that the arbitration agreement is not enforceable, and that her claims are not barred by the statute of limitations because she has met all time requirements under Title VII.

### III.  Material Facts

The Court has reviewed all of the parties' submissions.  For purposes of this Motion only, the Court construes all disputed facts most favorably to Ms. Rodriguez.

On April 18, 2005, Ms. Rodriguez began her employment with Wet Ink, doing business as AlphaGraphics.  She was provided with an Employee Handbook.  At the end of the Handbook, there were three separate agreements calling for the employee's signature.  Pertinent to this action is Form 3, an Arbitration Requirement.  It was signed by Ms. Rodriguez on May 2, 2005, and provided:

> In the event of any dispute arising between me and the Company concerning my employment, the termination of that employment, or any claim of discrimination, harassment, or failure to pay wages, benefits or other compensation, I agree that I may not sue upon such claim in a court of law, but agree to binding arbitration of any and all such claims, pursuant to the rules for employment disputes, if any, published or suggested by the Judicial Arbiter Group, Inc., Denver, Colorado, for the handing of employment claims and disputes, and that I will be required to contribute pursuant to the terms and conditions concerning arbitration contained in the Employee Handbook, if any.

Form 3, filed at **#43-1**.

The Employee Handbook set forth the contribution requirements. It stated in relevant part:

> DISPUTES ARISING BETWEEN YOU AND THE COMPANY OUT OF YOUR EMPLOYMENT ARE SUBJECT TO MANDATORY BINDING ARBITRATION.
>
> In the event that any dispute arises between AlphaGraphics and an employee or former employee or former employee out of the employment of the employee by AlphaGraphics, such dispute is subject to MANDATORY BINDING ARBITRATION of such claim by submission of the claim to Judicial Arbiter Group, Inc. (JAG), Denver, Colorado, for the resolution by ruling of a single arbiter. The parties agree to the following rules regarding the arbitration:
>
>> 1. The Parties shall pay any costs, fees or deposits required to be paid in advance by JAG as follows: if the employee is still employed by AlphaGraphics, then the Company shall pay all such fees except any attorneys fees of the employee. If the employee has been terminated by AlphaGraphics, then the Parties shall split such costs or deposits equally between the parties. A party that does not pay any cost, fee, or deposit required by JAG by the time limit set by JAG, shall forfeit the arbitration dispute and the other Party shall be entitled to entry of judgment by the Arbiter.

Employee Handbook, p. 29–30, filed as **#43-4**.

On August 28, 2006, Ms. Rodriguez resigned, alleging that she had been constructively discharged due to sexual harassment and discrimination based on her sex and national origin/ancestry. She filed a charge with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") on November 29, 2006. On January 29, 2008, the EEOC issued a right-to-sue letter advising Ms. Rodriguez that she had 90 days following receipt of the notice to file suit.

On February 23, 2008, pursuant to the Employee Handbook and Arbitration Agreement, Ms. Rodriguez demanded arbitration of her claims. On March 6, 2008, Wet Ink's counsel responded to Ms. Rodriguez's demand letter. After enumerating multiple reasons why it believed that she had no enforceable claim, Wet Ink stated, "If your client wishes to pursue arbitration notwithstanding the arguments above, she will have to contact JAG and pay all of the

required costs."

On April 3, 2008, Ms. Rodriguez withdrew her demand for arbitration, and on April 25, 2008, initiated the current action, asserting two claims for relief based on sexual harassment resulting in a hostile work environment, sex discrimination, national origin/ancestry discrimination, and retaliation.[1]

### IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby

---

[1] Wet Ink previously moved to dismiss based on three different theories: (i) the claims were time-barred for failure to initiate suit within 90 days of receiving a right-to-sue letter from the Colorado Civil Rights Division; (ii) the claims were subject to mandatory arbitration; and (iii) the claims were generally time-barred under the relevant statute of limitations. Addressing only the first argument, the Honorable Richard Matsch dismissed Ms. Rodriguez's claims. The Tenth Circuit reversed and remanded. Wet Ink has now moved for summary judgment based on the latter two arguments.

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

## V. Analysis

Wet Ink requests dismissal of this action based upon two related grounds. First, it contends that the Court lacks subject matter jurisdiction because Ms. Rodriguez' claims are subject to a binding arbitration agreement. Second, it contends that dismissal of her claims, rather than a stay as provided for under the Federal Arbitration Act, is appropriate because the claims are time-barred under Title VII. Ms. Rodriguez responds that: (i) discovery as to the enforceability of the arbitration agreement is necessary; (ii) the arbitration agreement is not enforceable because it is illusory, subjects her to substantial costs, and Wet Ink has "rescinded" it; and (iii) her claims are not time-barred.

The Court begins with Wet Ink's initial contention - that there is a binding arbitration agreement that deprives this Court of jurisdiction and compels Ms. Rodriguez to arbitrate her

claims.[2]

      **A.      Who determines the obligation to arbitrate?**

Wet Ink contends that all of the issues raised by Ms. Rodriguez pertain to contract validity, and are reserved to the arbiter. Wet Ink relies upon several decisions for this proposition: *Prima Paint Corp v. Flood & Conklin MFG. Co.*, 388 U.S. 395, 402 (1967); *Taylor v. First North American Nat. Bank*, 325 F. Supp.2d 1304 (M.D. Ala 2004); *Weis Builders, Inc v. Kay S. Brown Living Trust*, 236 F. Supp 2d 1197, 1203-04 (D. Colo. 2002), *aff'd*, 94 Fed. App'x 687 (10th Cir. 2004); *Patrick Higgins & Co., Inc. v. Brooke Corp.*, 2007 WL 2317123 (D. Kan. 2007).

Wet Ink's reliance is misplaced. These decisions do not suggest, much less hold, that an arbiter determines whether there is a duty to arbitrate. To the contrary, these decisions recognize certain general principles, such as: (1) the question of whether a contract creates a

---

[2] The Court notes that arbitration of claims is favored by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and that Title VII claims are subject to mandatory arbitration and the FAA. *See Metz v. Merrill Lynch, P ierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) ("So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" the statute creating the right will continue to serve its "remedial and deterrent function."). The FAA was enacted in 1925 to, *inter alia*, provide a "national policy favoring arbitration of claims that parties contract to settle in that manner. *See Vaden v. Discover Bank*, 129 S.Ct. 1262, 1271 (2009). Accordingly, § 2 provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Moreover, upon a motion to compel arbitration, § 4 authorizes the district courts of the United States to order that the parties to a dispute covered by an arbitration agreement submit to arbitration. Conversely, when, notwithstanding an arbitration agreement, a party files a lawsuit, § 3 provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; *see Will v. Parsons Evergreene, LLC*, 2008 WL 5330681, at *1 (D. Colo. Dec. 19, 2008); *Fuller v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 88 F.Supp.2d 1158, 1162–63 (D. Colo. 2000).

duty to arbitrate is an issue for judicial determination;[3] (2) the determination of arbitrability includes resolution of issues relating to performance of the arbitration agreement, the determination of which is governed by state law; and (3) when an arbitration agreement provides that all controversies and claims "arising out of or relating to" the agreement are subject to arbitration, then issues of enforceability of the agreement are determined by the arbiter.

Here, the arbitration agreement is limited to "any dispute arising between me and the Company concerning my employment, the termination of that employment, or any claim of discrimination, harassment, or failure to pay wages, benefits or other compensation." *See* Form 3, filed at **#43-1**.  Because the parties did not commit the determination of all issues "arising out of or related to" the arbitration agreement to arbitration, the question of whether Ms. Rodriguez has a duty to arbitrate is determined by the Court.  *See AT&T Techns. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

### B.    Is the arbitration agreement enforceable against Ms. Rodriguez under state law?

An arbitration agreement is a contract.  Under Colorado law[4], Wet Ink must establish three elements to compel Ms Rodriguez' performance: (1) existence of the contract; (2) performance on its part; and (3) failure to perform by Ms. Rodriguez.  *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  There is no dispute that the parties entered into

---

[3]  *Riley Mfg.Co. V. Anchor Glass Container Corp.*, 157 F3d 775, 779 (10th Cir. 1998).

[4]  Because both parties apply Colorado law, the Court assumes their agreement that it governs.

a written contract[5] that requires arbitration of claims such as those asserted by Ms. Rodriguez.

Ms. Rodriguez argues that Wet Ink's rescinded the contract, or alternatively that she is entitled to rescind the contract because Wet Ink refused to pay for one-half of the arbitration costs. The Court does not find that Wet Ink's actions reflect a knowing and intentional waiver of its right to arbitration. However, its refusal to pay one-half of the arbitration costs may affect Ms. Rodriguez's obligation to arbitrate. Colorado law provides that if one party fails to perform under a contract, and the failure is both material and unexcused, the other party may be relieved of a duty to perform. *See id.*; *Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981) (""). Thus the question is whether Wet Ink failed to perform in a material respect and whether its failure to perform was excused.

The arbitration provisions in Employee Handbook obligated Wet Ink to pay for all arbitration costs for a dispute with a current employee, and one-half of the costs of arbitration to resolve disputes with a terminated employee. Wet Ink argues that it was not obligated to pay for any arbitration costs because Ms. Rodriguez voluntarily resigned.

The Court disagrees. Ms. Rodriguez has consistently maintained that she was constructively terminated - forced to resign. Although Wet Ink may disagree, the question of whether she voluntarily resigned or was constructively terminated is at the heart of the parties dispute, to be resolved through arbitration or litigation. Wet Ink cannot determine its obligations under the arbitration agreement by assuming the outcome of the dispute. To perform in

---

[5] Wet Ink has argued that the agreement is limited to the Form 3 that Ms. Rodriguez executed. Ms. Rodriguez contends that the Form 3 and the applicable terms of the Employee Handbook should be read together as the agreement. In some sense, it does not matter whether the documents are viewed as separate or not because Form 3 dictates that Ms. Rodriguez's obligations to pay for arbitration costs are governed by the terms in the Employee Handbook.

accordance with the arbitration agreement, Wet Ink was required to treat Ms. Rodriguez' claim at face value, and therefore was required to pay one half of the cost of arbitration. The allocation of the costs for arbitration was a material term of the agreement; consequently, Wet Ink's refusal to pay was a material breach. Other than its conclusory view that Ms. Rodriguez' employment was not terminated, Wet Ink has offered nothing that would excuse its performance. The Court therfore finds that Wet Ink's refusal to pay its share of the arbitration costs was a material and unexcused breach of the arbitration agreement that excuses Ms. Rodriguez from her obligation to arbitrate.

**C.     Is the arbitration agreement otherwise unenforceable under federal law?**

Independent of Wet Ink's breach, Ms. Rodriguez urges the Court to find her obligation to arbitrate unenforceable under federal law because the costs of arbitration are so prohibitive to her that she is deprived of a forum in which to pursue her rights under Title VII. As to this proposition, she bears the burden of proof.

Ms. Rodriguez relies upon *Shankle v. B-G Maintenance Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999). In *Shankle*, the Tenth Circuit held that an arbitration agreement is unenforceable if the costs of paying for arbitration effectively leave the employee with no forum in which to pursue his or her Title VII claims. The plaintiff, a shift manager for a janitorial company, signed an arbitration agreement requiring him to submit discrimination claims to arbitration. The agreement also required that he pay one half of the arbitration fees, but that if he were unable to pay, the company would advance the fees even though he would remain liable for them. Upon his termination, which he alleged was unlawfully based on race, age, and disability, he initiated arbitration proceedings. After learning of the fees charged by the arbiter, he

9

canceled the arbitration and initiated a lawsuit in federal court. On a motion to compel arbitration, the district court recognized that arbitration agreements for employment claims are generally enforceable, but declined to enforce the particular agreement because the fee-splitting provision effectively left the plaintiff without a forum to adjudicate his claims. The Tenth Circuit affirmed, concluding that although an arbitration agreement can prohibit the use of the judicial forum for resolution of statutory rights, it must also provide an effective and accessible alternative forum. In *Shankle*, the court calculated that if the arbitration were to last an average amount of time, the plaintiff would be required to pay between $1875 and $5000 to resolve his claims. The court determined that, for the plaintiff, this was prohibitively costly and, therefore under the FAA, the arbitration agreement was unenforceable.

After *Shankle,* the United States Supreme Court addressed a similar situation in *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000). In *Green Tree*, the plaintiff financed a purchase of her home. The loan documents required that all disputes arising from or relating to the contract would be resolved through binding arbitration. The plaintiff sued for violations of the Truth in Lending Act, and the lender sought to compel arbitration. The issue presented to the Supreme Court was whether the arbitration agreement was enforceable in light of its failure to include a provision for the payment of arbitration costs. The plaintiff argued that this omission subjected her to the possibility of high fees and, therefore, prohibited her from pursuing arbitration. The Court noted that although large arbitration costs could preclude a plaintiff from effectively vindicating her federal statutory rights through arbitration, the particular plaintiff had not shown that this would occur. In declining to find the arbitration agreement unenforceable, the Court stated that where "a party seeks to invalidate an arbitration agreement on the ground

that it would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *See Green Tree*, 531 U.S. at 92.

Reading these opinions together, in order to show that the arbitration agreement effectively deprives a plaintiff of a forum to pursue statutory rights, Ms. Rodriguez must present evidence to establish that she is likely to incur arbitration costs that are so great that she effectively has no forum in which to assert her rights. Ms. Rodriguez has attested that she is a single mother earning $8.00 per hour, working six and one-half hours a day, five days a week, and that her income does not cover her monthly living expenses. She has also submitted evidence that JAGS' published rates are $290 to $500 per hour.

Wet Ink offers no evidence to rebut Ms. Rodriguez' showing. Instead, it argues that this showing is inadequate because it does not comport with the requirements imposed in *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004). As is relevant to this action, *Cooper* addressed whether an arbitration agreement was unenforceable due to prohibitive costs suffered by a plaintiff who alleged employment discrimination. The arbitration agreement included a cost splitting provision, but upon the plaintiff's assertion that she could not afford the arbitration costs, the defendant responded that it would pay for her share of the costs of arbitration. Thus the question before the Sixth Circuit was whether the cost splitting provision of the arbitration agreement rendered the contract unenforceable (without consideration of its effect on the plaintiff in the case).

To resolve this question the 6th Circuit turned to its earlier decision in *Morrison v. Circuit City Stores*, 317 F.3d 646, 663 (6th Cir. 2003). There it addressed the question of whether the costs arising from cost-splitting arbitration provisions affecting enforcement of

Title VII statutory rights rendered the arbitration requirement unenforceable. In *Morrison*, the court carefully explored various approaches used in other circuits for determining whether the cost of required arbitration is so expensive that it deprives a litigant of a forum for assertion of Title VII claims. It concluded that for a cost-splitting arbitration provision to be unenforceable due to cost, there must be a determination that the anticipated costs are prohibitive to both the particular litigant and similarly situated potential litigants. This requires identification of similarly situated potential litigants and determination as to whether costs of arbitration would deter both the particular litigant and similarly situated potential litigants from pursuing statutory rights. *Morrison*, 317 F3d at 663. The 6th Circuit applied this requirement in *Cooper*.

Wet Ink is correct in that Ms. Rodriguez has not shown who similarly situated potential litigants might be and how they would be affected by the arbitration cost allocation. But she is not required to do so under 10th Circuit precedent.

The 6th Circuit recognized in *Morrison* that its approach differed from that of the Tenth Circuit. The binding precedent in the Tenth Circuit is *Shankle,* which requires only a showing of the complaining party's actual inability to afford the arbitration costs and fees. In *Shankle,* the court acknowledged that arbitration of statutory claims works if potential litigants have an adequate forum in which to resolve their statutory claims, but emphasized that this supposition falls apart "if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights." *Shankle* 163 F 3d at 1234.

Although the approach taken by the Sixth Circuit in *Morrison* and applied in *Cooper* may have much to commend it, it is inconsistent with the binding precedent of *Shankle*. In this Circuit, the question of whether the cost of arbitration is a prohibitive deterrent to assertion of

Title VII rights is determined by the actual effect on the complaining party. This Court declines to depart from such precedent.

Ms. Rodriguez' showing is both sufficient and unrebutted. Although the total amount that Ms. Rodriguez would likely have to pay for arbitration is speculative, the prohibitive cost of pursuing arbitration is apparent. A single hour of arbitration at JAG's lowest published rate ($290) is more than Ms. Rodriguez earns in a week ($260). To spend a quarter of her monthly income (which already is inadequate to cover her expenses) for a single hour of arbitration is cost prohibitive to her. Accordingly, the Court finds that the arbitration agreement denies her an effective forum to pursue her statutory claims and therefore declines to enforce it.

### D.     Are Ms. Rodriguez' claims time barred?

Wet Ink also argues that Ms. Rodriguez's claims are time-barred. As to this issue, it bears the burden of proof. It contends that because the arbitration agreement divested the EEOC/CCRD of authority to adjudicate the dispute, during its deliberations the time for filing an action under Title VII was not tolled, and expired. Ms. Rodriguez disagrees.

The difficulty with Wet Ink's argument lies in its premise - that the arbitration agreement divested the EEOC/CCRD of authority to adjudicate[6] the parties' dispute. Ordinarily, the requirements set forth in 42 U.S.C. § 2000e-5 require the filing of a complaint

---

[6] Wet Ink relies on *Preston v. Ferrer*, 552 U.S. 346 (2008). Contrary to Wet Ink's interpretation, *Preston* recognized that in an employment discrimination action, the EEOC (or the state agency) does not act as an adjudicator, but instead as a mediator or as a prosecutor that can pursue an enforcement action in its own name. *Preston* also makes clear that an arbitration agreement does not limit a plaintiff's ability or authority to file a avail him or herself of the administrative process provided by the EEOC. *See Preston*, 552 U.S. at 358–59 (citing to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28–29 (1991) and *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293–94 (2002)).

or "charge" with the EEOC/CCRD within 300 days of the alleged discrimination,[7] filing a notice of the charge with the employer within ten days of filing the charge, and filing a lawsuit within 90 days of receipt of a "right-to-sue letter" from the CCRD or EEOC. *See* 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); 29 C.F.R. § 1614.407. There is nothing in the arbitration agreement that addresses any part of this process except the last step - a lawsuit. The arbitration agreement did not change the time for nor preclude the filing of a claim with the EEOC/CCRD. It simply changed the forum for resolution of claims remaining after completion of the EEOC/CCRD process - by arbitration rather than in court. Ms. Rodriguez was free to pursue her rights before the EEOC/CCRD, then to assert any appropriate claims in accordance with time limitations ordinarily imposed. There is no dispute that Ms. Rodriguez satisfied all requirements under § 2000e-5, therefore Ms. Rodriguez' claims against Wet Ink are not time barred.

**IT IS THEREFORE ORDERED** that

(1) Defendant Wet Ink, LLC d/b/a AlphaGraphics a/k/a Wet Ink, Corporation's Motion for Summary Judgment (#43) is **DENIED**, and its request to compel arbitration is **DENIED**.

---

[7] Generally, § 2000e-5 requires that an employee file a charge within 180 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1). If, however, the employee first files with a state agency such as the Colorado Civil Rights Division ("CCRD"), the deadline is extended to 300 days. *See id.*

(2) A final pretrial conference is scheduled for **June 16, 2011 at 3:00 p.m.** in Courtroom A901 before Judge Marcia S. Krieger. All provisions of the Court's Trial Preparation Order shall apply to the rescheduled conference

Dated this 22nd day of March, 2011

                                    **BY THE COURT:**

                                    Marcia S. Krieger
                                    United States District Judge