**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 08-cv-00857-MSK-CBS

PATRICIA RODRIGUEZ,

      Plaintiff,

v.

WET INK, LLC d/b/a ALPHAGRAPHICS a/k/a WET INK, CORPORATION,

      Defendant.

---

**OPINION AND ORDER GRANTING, IN PART, MOTION FOR ATTORNEY FEES
AND DENYING MOTIONS TO ALTER JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Ms. Rodriguez's Motion for

Attorney Fees (**# 125**), Wet Ink's response (**# 130**), and Ms. Rodriguez's reply (**# 134**); Wet

Ink's Motion to Alter Judgment (**# 128**), Ms. Rodriguez's response (**# 137**), and Wet Ink's reply

(**# 142**); Wet Ink's Motion to Vacate Punitive Damage Award (**# 129**), Ms. Rodriguez's response

(**# 136**), and Wet Ink's reply (**# 141**); and Ms. Rodriguez's Motion for Post-Judgment Discovery

(**# 135**), Wet Ink's response (**# 143**), and Ms. Rodriguez's reply (**# 144**).

## FACTS

As set forth in greater detail below, this case presents claims by Ms. Rodriguez that, as an

employee of Wet Ink, she was subjected to sex discrimination, hostile environment sexual

harassment, and was retaliated against for complaining of discrimination, all in violation of Title

VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*  Ms. Rodriguez's claims proceeded to a

jury trial in April 2013.  The jury found in favor of Wet Ink on Ms. Rodriguez's sex

1

discrimination and hostile environment claims, but returned a verdict for Ms. Rodriguez on her

retaliation claim.  The jury awarded her $ 1,727.04 in economic damages, $ 3,000 in non-

economic damages, and $ 16,822.96 in punitive damages.  Presently before the Court are

motions by Wet Ink seeking to set aside the jury's verdict in particular respects, and Ms.

Rodriguez's motions seeking an award of attorney fees under 42 U.S.C. § 2000e-5(k) and a

request for discovery of Wet Ink's own attorney fees in support of her request for fees.

## ANALYSIS

### A.  Wet Ink's motions

#### 1.  Motion to Amend Judgment

The most logical place to start is Wet Ink's Motion to Amend Judgment.  Wet Ink argues

that it should be granted judgment as a matter of law on Ms. Rodriguez's retaliation claim, on the

grounds that Ms. Rodriguez did not possess a "reasonable good-faith belief" that the conduct she

had complained of – the complaint that prompted the retaliation – was unlawful under Title VII.

The precise vehicle by which Wet Ink brings the motion is somewhat unclear.  Wet Ink

states that its motion is brought "under Rules 59 and 60," as well as characterizing it as being "a

subset of Wet Ink's Rule 50 motion at trial."  The Court's review of the record belies any

contention that the instant motion renews any Rule 50 argument that Wet Ink made at trial – at

no point in its articulation of its Rule 50 motion did Wet Ink contend that it was entitled to

judgment as a matter of law on Ms. Rodriguez's retaliation claim, much less argue that such

judgment was appropriate because Ms. Rodriguez lacked any reasonable good-faith belief" that

her conduct of lodging complaints was protected by Title VII.[1]

---

[1]     Rule 50(b) permits a party to "renew," post-verdict, a motion for judgment as a matter of law made during trial.  Because Wet Ink did not move during trial for relief on the grounds it currently states, the Court cannot characterize the instant motion as "renewing" any prior motion.

In addition, there are conceptual differences between motions brought under Fed. R. Civ. P. 59(e) and those under Fed. R. Civ. P. 60(b). The former is "the appropriate vehicle to correct manifest errors of law or to present newly discovered evidence," while the latter is a means to remedy (among other things) "mistake, inadvertence, surprise, or excusable neglect." *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011). When, as here, a motion is timely under both rules, the Court construes it under the rule most applicable to "the reasons expressed by the movant" for seeking relief. *Id.* Because Wet Ink essentially argues that it was entitled to judgment as a matter of law on Ms. Rodriguez's retaliation claim, and does not assert that relief is warranted due to any mistake or inadvertence by Wet Ink, the Court will treat the motion as one brought under Fed. R. Civ. P. 59(e). *See also Coons v. Industrial Knife Co.*, 620F.3d 38, 41 (1st Cir. 2010) (suggesting that Rule 59(e) is an appropriate means for a party to assert an error of law that should have been made in a Rule 50 motion).

In the circumstances presented here, Rule 59(e) is invoked to permit the Court to "correct clear error or prevent manifest injustice" resulting from an error of law. *See Monge v. RG Petro-Machinery (Group) Co.*, 701 F.3d 598, 611 (10th Cir. 2012). Relief is appropriate if the Court has "misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Because the motion essentially asks the Court to grant judgment as a matter of law, the standard of review for a Rule 50 motion is appropriate. Thus, Wet Ink bears the burden of showing that, when the evidence at trial is viewed in the light most favorable to Ms. Rodriguez and all reasonable inferences resolved in her favor,

---

The instant motion raises a new argument that Wet Ink had not previously presented to the Court.

3

there is no sufficient evidentiary basis to permit the conclusion that Ms. Rodriguez engaged in protected activity.  *See e.g. Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010).

Title VII prohibits an employer from retaliating against an employee based on that employee having "opposed any practice made an unlawful employment practice by this [statute] or because he has made a charge, testified, assisted, or participated in any manner in an investigating, proceeding, or hearing" under the statute.  42 U.S.C. § 2000e-3(a).  Protected opposition to discrimination can range from the filing of formal charges to simply voicing informal complaints to supervisors.  *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).  The statute prohibits opposition to "an unlawful employment practice", but it does not protect every single informal complaint an employee may lodge with her supervisors. Frequently, an employee may subjectively believe that she is being discriminated against, and may lodge a complaint to that effect with her supervisor, but an objective review of the complained-of conduct yields no basis to conclude that the conduct was unlawful discrimination. This leads to the frequently-litigated question of whether an employee's complaint of discrimination is a protected act under Title VII, even though the conduct the employee complains of would not be objectively sufficient to constitute an "unlawful employment practice" prohibited by the statute.

The 10th Circuit has long held that an employee's mistaken-yet-good-faith belief that she is being discriminated against makes her complaint to that effect "protected activity" under Title VII.  *See Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984); *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998); *Crumpacker v. Kansas Dept. of Human Resources*, 338 F.3d 1163, 1171-72 (10th Cir. 2003).  The employee's belief that discrimination is afoot must be reasonable. Indeed, *Crumpacker* emphasized that an employee's subjective

belief that she was the subject of discrimination, if <u>unreasonable</u>, is not sufficient to confer protection on her complaints of such discrimination. 338 F.3d at 1171, *citing Clark County School Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  Thus, "the issue is not [the employee's] subjective reasons for filing [her] original complaint . . . but rather, whether [she] had a reasonable good faith belief that the conduct complained of violated Title VII." *Board of County Comm'rs of Fremont County v. EEOC*, 405 F.3d 840, 852 (10th Cir. 2005).  It is thus necessary to consider whether "a reasonable person in [the employee's] position could have believed that [she] was opposing prohibited conduct." *See Held v. Ferrellgas, Inc.*, 505 Fed.Appx. 687, 689 (10th Cir. 2012) (unpublished).

Taken in the light most favorable to Ms. Rodriguez, the record supports a finding that her belief that she was being exposed to unlawful discrimination and harassment was reasonable when she complained to her supervisor, Dave Mooney, and to Wet Ink's owner, Ed Rothschild. Ms. Rodriguez testified to numerous instances of offensive, sex-based insults and ridicule directed at her and other women, most often by her immediate supervisor, Tom Meltz.  Among other things, Ms. Rodriguez described: (i) finding Mr. Meltz viewing pornography on an office computer on three occasions, one of which resulted in Ms. Rodriguez herself being exposed to the onscreen image; (ii) at least three occasions in which Mr. Meltz used binoculars to watch women on the sidewalk across the street, during which Mr. Meltz made offensive comments about the women's' bodies, such that the women had a "nice set" of breasts or legs or that "I wouldn't mind getting with that one"; (iii) she overheard Mr. Meltz begin a joke to the effect of "how many blonde women does it take to change a light bulb" (Ms. Rodriguez walked away before hearing the punch line); (iv) she heard Mr. Meltz invite a male co-worker to go to a strip club during lunch, at which time Mr. Meltz stated that "all women were good for were taking off

their clothes and pole dancing"; (v) others saw Mr. Meltz making faces and gestures towards Ms.

Rodriguez when her back was turned; (vi) Mr. Meltz loudly belittled her for making mistakes

when he ignored mistakes made by male employees; (vii) Mr. Meltz made her do filing tasks

when idle male employees were available because, as Mr. Meltz commented, "women were

better at filing than men were"; and (ix) Mr. Meltz was rude or curt with Ms. Rodriguez and did

not demonstrate similar disposition with male employees.   Ms. Rodriguez testified that she

brought some of these matters[2] to Mr. Rooney and Mr. Rothschild's attention via several oral

and written complaints that reference Mr. Meltz' "harassment" of her, his "prejudice [ ] to me

and towards women" and "the prejudice and discriminating treatment that my immediate

supervisor Tom Melt[z] has, and continues to exercise against me on a regular basis."

    Courts ordinarily assess whether a working environment is actionably hostile based on

two primary factors: the severity of the alleged harassment, and its pervasiveness. *See generally*

*Breeden*, 532 U.S. at 270-71.  It would appear to this Court, however, that it is inappropriate to

measure the reasonableness of a lay employee's belief about the scope of antidiscrimination laws

through any rigid metric.  Few employees, if pressed, could correctly identify the particular

factors that a court examines in assessing a hostile work environment claim.  It seems

---

[2]     Ms. Rodriguez's written complaints largely omit references to overtly sex-based behavior by Mr. Meltz (*e.g.* the sexist comments) and instead focus primarily on Mr. Meltz's rude disposition towards and criticism of Ms. Rodriguez.

      However, the question presented in Wet Ink's motion is whether Ms. Rodriguez had a good faith belief that she was complaining about unlawful harassment, not whether her complaints were sufficient to apprise Wet Ink of the full panoply of her allegations.  Wet Ink points to no authority that indicates that the question of whether an employee's complaint is protected activity or not turns, in part or whole, on whether that complaint comprehensively recites all of the employee's concerns, or merely a subset of them.  In any event, it is clear that Ms. Rodriguez advised Wet Ink in her written complaints that she was concerned about Mr. Meltz's "prejudice and discriminating treatment" and his "prejudice towards women," which was sufficient to advise Wet Ink of the general nature of her complaints, even if her narrative recitation in those complaints was not exhaustive.

inappropriate to require an employee, before making a good-faith claim of harassment to their employer, to stop and apply the same legal inquiry and filters to that complaint that employment lawyers or the courts would apply to a formal Title VII claim.  Most employees lack the legal training, or, for that matter, the underlying familiarity with the operation of Title VII to make such an assessment.  Thus, it appears to be more appropriate to assess the reasonableness of an employee's good-faith belief that behavior was unlawful harassment with a simpler inquiry: whether an employee, perhaps familiar only with the basic notion that the law prohibits sex discrimination and sexual harassment, could reasonably believe that the type of conduct she complains of might be unlawful.[3]

Regardless of whether this Court applies that a generalized test, or deems Ms. Rodriguez to have balanced the severity of the conduct she complained of against its pervasiveness, the result is the same: the Court cannot say that, as a matter of law, it was objectively <u>un</u>reasonable for Ms. Rodriguez to believe that these incidents, taken as a whole, constituted unlawful sexual harassment.  Two of the instances – Mr. Meltz stating that "all women were good for were taking off their clothes and pole dancing" and "women were better at filing than men were" – are patently sexist remarks that any reasonable employee would recognize as being inappropriate in the workplace.  Two more of the instances – Mr. Meltz looking at pornography on work computers[4] and Mr. Meltz and others using binoculars to watch female pedestrians and comment

---

[3]     Curiously, Wet Ink's own employee handbook, admitted as Exhibit 7, assures employees of this fact.  It states "not all conduct of a sexual nature is 'sexual harassment' as that term is used in the handbook, or as is used in Title VII.  The use of sexually oriented words, references, or expressions may not violate state or federal law, but may nonetheless constitute a violation of the Company's requirements. . . . <u>In short, you do not need to worry about whether the conduct you believe is inappropriate is actually 'sexual harassment.'</u>"

[4]     Wet Ink's motion alleges that the evidence at trial was that Ms. Rodriguez was not personally aware of and did not actually see Mr. Meltz viewing pornography.  No citation is offered for this proposition, and it is fundamentally inconsistent with the record.  Ms. Rodriguez

lewdly on their physical attributes – are also examples of conduct that, while not necessarily sexist in nature, are nevertheless clearly likely to be perceived by employees as offensive and inappropriate in a workplace setting.

Regardless of whether such conduct would be sufficient, as a matter of law, to permit a hostile environment claim to proceed, the Court cannot say that it would be unreasonable for an employee to have a good faith belief that antidiscrimination laws would prohibit such conduct. This conduct is coupled with Ms. Rodriguez's more nebulous complaints of discrimination or harassment by Mr. Meltz.  Viewing the combination, the Court cannot say that Ms. Rodriguez was so mistaken in her belief that the conduct might violate Title VII that her complaints so as to make her complaint unprotected.  *Compare Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178-79 (2d Cir. 1996) (employee had sufficient reasonable good-faith belief in complaint of hostile environment harassment where her supervisor was generally dismissive of her, made a comment to the effect of "if you think my pecker is getting in the way ...," and a co-worker once referred to her as a "bitch in heat"); *Duran v. LaFarge North America, Inc.*, 855 F.Supp.2d 1243, 1250 (D.Colo. 2012) ("The Court finds that it is reasonable for an individual without legal training to believe that the use of a racial slur ['dirty Mexican'] in the workplace, even if it was an isolated incident and made outside his presence, violates Title VII"); *Oliver v. Peter Kiewitt & Sons*, 106 Fed.Appx. 672, 675 (10th Cir. 2004) (employee had sufficient reasonable good faith belief in complaint that someone had displayed a cucumber in a way to suggest a "phallic connotation,"

---

unambiguously testified that she witnessed Mr. Meltz (and others) viewing pornography on an office computer and that she saw "a half naked lady with three X's on the top" on the screen.

Ms. Rodriguez did not specifically mention the issue of pornography in her complaints to Wet Ink nor in her discovery responses, but her failure to previously mention such matters does not negate her trial testimony - that she witnessed the use of pornography in the office.   The Court must, for purposes of this motion, credit Ms. Rodriguez's testimony on that point.

and co-worker had previously used cucumber to simulate masturbation in front of a female co-worker, asking "how would you like to have this under the table").  Put another way, taking all the evidence presented by Ms. Rodriguez as true, a reasonable person in her shoes could have reasonably believed that the conduct was unlawful.

Wet Ink cites to several cases in which courts found that an employee's complaints are not protected conduct under Title VII.  Each of these cases is distinguishable from the facts in this case.

Wet Ink first relies upon *Breeden*.  There, the plaintiff employee complained to her supervisors about a single incident when, in reviewing job applicants' evaluation reports, her co-worker observed that one of the applicants had once made a workplace comment to a female that "I hear making love to you is like making love to the Grand Canyon."  The co-worker then looked at the plaintiff and said "I don't know what that means," prompting another co-worker to comment "I'll tell you later," and both men chuckled.  In affirming a trial court's grant of summary judgment on the plaintiff's subsequent retaliation claim, the Supreme Court concluded that "No reasonable person could have believed that the single incident recounted above violated Title VII's standard."  *Id.* at 271.  It stated that the plaintiff's job duties required her to "review the sexually explicit statement in the course of screening job applicants," and noted that she had "conceded that it did not bother or upset her to read the statement in the file."  *Id.*  The Court further found that the co-worker's subsequent comment about the statement and the second co-worker's joke about it were "at worst an isolated incident that cannot remotely be considered 'extremely serious' as our cases require."  *Id.*  *Breeden* is distinguishable from the instant case in several respects.  First, unlike the plaintiff in *Breeden*, Ms. Rodriguez faced more than a single, d innuendo. The record reflects at least four separate plainly offensive sex-based acts by Mr.

Meltz, and several more acts of a more ephemeral character.  Second, unlike the plaintiff in *Breeden*, nothing in Ms. Rodriguez's job duties required her to be exposed to sexually-suggestive material.  Third, unlike the plaintiff in *Breeden*, Ms. Rodriguez was subjectively offended by the instances she complained of.

Wet Ink also relies upon *Robinson v. Cavalry Portfolio Services, LLC*, 365 Fed.Appx. 104, 111-14 (10th Cir. 2010) (unpublished).  There, an employee claimed she was retaliated against for providing a witness statement to her employer about an incident in which a co-worker repeatedly used the word "nigger" and thereafter made a racist comment.  The co-worker was disciplined for the incident.  After the plaintiff herself was terminated, she brought claims against the employer including unlawful retaliation. A jury awarded a verdict in her favor on that claim.  The 10th Circuit set aside the verdict, finding that "no reasonable person could have believed that the single [ ] incident violated Title VII's standard."  *Id.* at 113.  It noted that "the employees' reports, including [the plaintiff's], do not claim that [the employer] did anything wrong.  They state a co-employee made a racial slur."  *Id.*  Reading *Robinson* most charitably in Wet Ink's favor, it, like *Breeden*, is clearly distinguishable in several respects.  First, it involved a single incident, not multiple ones. Second, it involved an offensive comment by a co-worker, rather than a supervisor. Third, the plaintiff was not initially offended by the comment (her witness statement about the event opined that she was "pretty sure he wasn't using the term ["nigger"] negatively, he was just using the term to describe a certain situation".  Thus, like *Breeden*, *Robinson* does not warrant the conclusion that Ms. Rodriguez's belief that Mr. Meltz's conduct was unlawful was inherently unreasonable.

The Court has reviewed the remaining authorities cited by Wet Ink on this point, and finds them to be similarly unpersuasive.  Accordingly, the Court denies Wet Ink's motion.

2. <u>Motion to vacate punitive damage award</u>

Wet Ink also moves to vacate the jury's award of punitive damages to Ms. Rodriguez, arguing that Ms. Rodriguez failed, as a matter of law, to establish the necessary factual predicates for an award of such damages.  As with Wet Ink's prior motion, the Court will review this motion under the "manifest injustice" standard of Rule 59(e), coupled with Rule 50(a)'s requirement that this review consider the evidence at trial in the light most favorable to Ms. Rodriguez.

Punitive damages may be awarded under Title VII where the employee comes forward with sufficient evidence to permit the conclusion that the employer acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  This standard is satisfied by the employee producing evidence demonstrating that the employer "discriminate[d] in the face of a perceived risk that its actions will violated federal law."  *Kolstad v. American Dental Assn.*, 527 U.S. 526, 536 (1999).

The record clearly reflects that Wet Ink was aware that Title VII prohibited it from engaging in retaliation.  Exhibit 7, Wet Ink's employee handbook, expressly states as much:

> Any employee . . . who makes a complaint or inquiry concerning sexual harassment shall be protected against any form of retaliation.  Retaliation against an individual for reporting sexual harassment . . . is prohibited by the Complaint and by state and federal law.

Mr. Rothschild, the owner of Wet Ink, testified that he was the person who drafted the employee handbook, in consultation with an attorney.  Thus, there can be little dispute that Mr. Rothschild was aware that Title VII prohibited Wet Ink from retaliating against an employee who lodged a colorable claim of discrimination or harassment.

The retaliatory act alleged in this case took the form of Wet Ink refusing to allow Ms. Rodriguez to continue working (or give her pay in lieu of work) after she delivered her notice of intent to resign two weeks later.  On August 28, 2006, Ms. Rodriguez delivered a written notice to Wet Ink informing her that she would be resigning her employment, effective in two weeks. She then went to lunch.  When she returned, Mr. Mooney issued her a formal disciplinary notice entitled "final warning."  She testified that Mr. Mooney then advised her that her services were no longer needed, effectively terminating her.  She testified that Wet Ink never offered to pay her for her remaining two weeks.[5]

There is some dispute as to who – Mr. Mooney or Mr. Rothschild, or both – made the decision to terminate Ms. Rodriguez's employment instead of permitting her to complete her remaining two weeks (or even whether Wet Ink was implementing a policy that permitted employees to leave upon the tender of their two week notice while still being paid for those two weeks), but the issue is largely irrelevant. The record, taken in the light most favorable to Ms. Rodriguez, establishes that she was terminated on August 28, 2006.  Regardless of whether it was Mr. Mooney[6] or Mr. Rothschild who effectuated that termination, both men were aware that

---

[5]      Ms. Rodriguez did testify that she was required to sign the final warning notice "in order for me to get my last check," but she then made clear that "that was my last check [for time she had already worked].  That wasn't my [remaining] two weeks that they claimed that they were going to pay me for."

[6]      Wet Ink argues that it cannot be held liable for conduct by Mr. Mooney that was done in contravention to company policies. *Citing Harsco Corp. v. Renner*, 475 F.3d 1179, 1189 (10th Cir. 2007).  *Harsco* stands for the proposition that in a hostile environment harassment case, it is not sufficient for an employee seeking punitive damages to show that managerial employees failed to sufficiently respond to complaints of harassment if the company itself had made adequate good-faith efforts (that managerial employees failed to properly implement) to prevent such harassment.  But *Harsco* is irrelevant here, as Ms. Rodriguez's successful claim was for retaliation (and, more specifically, a retaliatory termination) not hostile environment harassment. Mr. Mooney could not terminate Ms. Rodriguez's employment without drawing upon power

Ms. Rodriguez had previously made allegations of sex discrimination and harassment against Mr. Meltz. Because the record adequately established that: (i) Wet Ink (and its decision makers) was aware of the prohibition against retaliation in Title VII; (ii) was aware that Ms. Rodriguez had made complaints of sex discrimination and harassment against Wet Ink; and (iii) proceeded to terminate her employment, the jury could reasonably conclude that Wet Ink's decision to terminate Ms. Rodriguez was made with "reckless indifference" to her federally-protected rights. Thus, Wet Ink's motion to set aside the punitive damage award is denied.

### B. Ms. Rodriguez's motions

#### 1. Motion for discovery

As discussed below, Ms. Rodriguez has requested an award of attorney fees. Wet Ink opposes the request, in part, by arguing that Ms. Rodriguez's claimed hours are excessive. In response, Ms. Rodriguez requests that she be permitted to engage in discovery of the fees that Wet Ink's counsel charged it. Because this request, if granted, would bear on the evidence that the Court would considering in evaluating the substantive fee motion, the Court addresses it first.

Ms. Rodriguez cites *Martinez v. Schock Transfer & Warehouse Co.*, 789 F.2d 848, 850 (10th Cir. 1986), for the proposition that "the Court has discretion to allow discovery into opposing counsel's billing records," but fails to note that the trial court in *Martinez* refused to permit such inquiry, and the 10th Circuit affirmed that exercise of discretion. Underlying Ms. Rodriguez's request is an assumption that what the attorney on one side of the case charges is some indicia of what would be a reasonable fee for the attorney on the other side of the case. This premise is erroneous for several reasons.

conferred upon him by Wet Ink, acting on Wet Ink's behalf. Thus, for purposes of the retaliation claim, any actions by Mr. Mooney were acts by Wet Ink itself.

First, it necessarily assumes that the fees billed by defense counsel are "reasonable", or that "reasonableness" or a fee is determined by what the opposition charged.  In other words, "reasonableness" is not an objective determination, but instead is the product of comparison – in essence, relatively reasonable.  This cannot be so, for it is entirely possible that both billings to both parties are unreasonable in some respect.

Second, it assumes that that attorney fees charged to each party will be equivalent.  That is not necessarily the case.  The parties may have different fee agreements; counsel may charge different hourly rates or charge for different services.  In addition, the litigation burdens on plaintiffs and defendants (particularly in employment law cases) are not necessarily symmetrical- an employment plaintiff might issue numerous requests for production of documents that cause their opponent's counsel to spend significant time collecting and reviewing personnel and corporate records, but that plaintiff will rarely face a similar burden in producing what few records of his or her own.   Preparing to take depositions (which plaintiff employment attorneys are likely to do more often) may be more time intensive than preparing to defend a deposition (which defense attorneys are more likely to do).  Because there is no reason to assume that the parties' relative time expenditures on a case are symmetrical, there is little reason to believe that discovery of one's opponent's billing records will be necessarily probative of a party's own claim that their incurred fees were "reasonable."

There could be circumstances where discovery of an opponent's billing records might be warranted.  For example, Ms. Rodriguez cites to *Mendez v. Radec Corp.*, 818 F.Supp.2d 667, 669 (W.D.N.Y. 2011), where the defendant expressly invoked its own charged fees in arguing that the plaintiff's requested fees were excessive.  In such circumstances, where the defendant expressly holds up its own billings as a model of reasonableness, discovery by the plaintiff of

those fees might be appropriate.  Or, there may be situations where a dispute over claimed hours turns on questions that can be resolved by consulting both sides' billing records.  These might include disputes over the length of a mediation session, a dispute over how many attorneys attended for each side, or a dispute over when a particular telephone conference occurred, etc.

No such circumstances are presented here.  Thus, the Court finds no good cause to permit Ms. Rodriguez to engage in discovery of Wet Ink's billing records.  Accordingly, Ms. Rodriguez's motion is denied.

### 2. Fee request

Ms. Rodriguez's motion for attorney fees seeks an award of $ 121,329.00 in attorney fees. 42 U.S.C. § 1988(b) provides that a successful Title VII plaintiff – a "prevailing party" -- is entitled to an award of "a reasonable attorney's fee."[7]  In determining the amount to award in such fees, the Court engages in the familiar "lodestar" analysis. *See generally Gisbrecht v.*

---

[7]      Wet Ink argues, at some length, that Ms. Rodriguez is not entitled to any fee award at all, as she obtained only a "technical" or "nominal" victory.  *Citing Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  In certain circumstances – typically those involving genuinely "nominal" damage awards (*i.e.* $1) or situations where the plaintiff obtained only equitable relief of dubious value – courts will deny any award of fees to a plaintiff despite their "prevailing party" status.  It considers whether to reduce (or even outright eliminate) an award of fees to Mr. Scott on the ground that he achieved nothing more than a "technical" or "nominal" victory. *See e.g. Lippoldt v. Cole* 468 F.3d 1204, 1222 (10th Cir. 2006); *Zinna v. Congrove*, 680 F.3d 1236, 1240-41 (10th Cir. 2012).  However, there can be no argument here that Ms. Rodriguez secured only a "nominal" victory on her retaliation claim.  The jury awarded her 100% of her claimed economic damages on that claim, a proportional non-economic damage award, and a generous punitive damage award.   Far from being the type of "*de minimis*" victory that *Farrar* contemplates warranting a denial of all fees, 506 U.S. at120-12 (O'Connor, J. concurring), Ms. Rodriguez's complete success on one of her claims clearly entitles her to a reasonable fee award (reduced, as appropriate, to reflect her lack of success on her other claims).

In any event, even if the Court were to consider the three factors articulated in cases like *Zinna*, it would nevertheless conclude that all three factors tip in favor of Ms. Rodriguez.  Her recovery, although significantly less than her settlement demand, was nevertheless considerable; she obtained complete success on one of the three claims she asserted; and advances the public goal of prohibiting retaliation and encourages the bringing of civil rights suits. *See generally Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1228-32 (10th Cir. 2001) (discussing the three factors).

*Barnhart*, 535 U.S. 789, 801-02 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence"); *Jean*, 496 U.S. at 161.  In doing so, the Court makes an initial, or "lodestar," calculation by multiplying a reasonable hourly rate by the number of hours reasonably expended by the attorney(s) on the case.  *Id.* at 802; *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  Typically, the lodestar figure represents the appropriate amount of fees to be awarded; adjustments to the lodestar figure are made only in unusual situations. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

Turning first to a reasonable hourly rate, Ms. Rodriguez's counsel billed time at hourly rates between $ 180 and $ 230 over the span of the litigation.  Wet Ink does not contend that such rates are unreasonable for cases of this type, and the Court finds such rates to be reasonable.[8]

The Court then turns to the question of number of hours expended by Ms. Rodriguez's counsel in this case.  Ms. Rodriguez claims a total of 554.5 hours were expended on this case, nearly all of which were by her counsel, Ms. Hahn.  The Court notes that the pretrial proceedings in this case were unusually extensive.  After receiving the initial complaint, Wet Ink moved (# 7, 8) to dismiss on grounds that the claims were untimely and barred by an arbitration agreement. The presiding judge granted the motion, and dismissed the action, but Ms. Rodriguez appealed that decision and the 10th Circuit reversed (# 38).

On remand, Wet Ink sought summary judgment (# 43) on Ms. Rodriguez's claims, re-asserting the argument that her claims were barred by an agreement to arbitrate, but this Court found (# 48) that Wet Ink repudiated that arbitration agreement by refusing to pay its share of

---

[8]     Wet Ink seems to suggest that Ms. Hahn is obligated to produce a copy of her fee agreement with Ms. Rodriguez in order to recover any fees, or to justify the hourly rates she claims.  Wet Ink cites no authority for this proposition, and the Court summarily rejects it.

arbitration costs.   The parties proceeded through discovery and Wet Ink filed a third dispositive

motion (# 70), which this Court granted in some minor respects (granting summary judgment to

Wet Ink on Ms. Rodriguez's national origin discrimination claim and narrowing the scope of her

remaining claims), but otherwise allowed Ms. Rodriguez's claims of hostile environment

harassment, sex discrimination, and retaliation to proceed to trial.  Given the significant pretrial

proceedings – several dispositive motions and a successful appeal[9] -- as well as the time required

for preparation for and presentation of a jury trial, the Court cannot say that, in the broadest

terms, the number of hours spent by Ms. Rodriguez' counsel is patently unreasonable.

The Court then turns to specific items in Ms. Hahn's billing records that Wet Ink

specifically opposes.  Wet Ink itemizes various billing entries totaling approximately $60,000

that it claims are unreasonable.  The stated objection is that the particular tasks – evaluation of

damages and mitigation efforts, preparation for and taking of depositions, "all entries related to

jury instructions" and the proposed pretrial order – were "unrelated to the retaliation claim" on

which Ms. Rodriguez was successful.

Wet Ink is correct that, as a general matter, courts frequently reduce the total amount of

attorney fees sought to reflect situations where a party prevailed on some claims, but failed to

---

[9]     Wet Ink makes a cursory argument that Ms. Rodriguez should not receive an award of
fees for the appellate proceedings because she did not make a request for fees to the 10th Circuit.
In *Flitton v. Primary Resid. Mortg., Inc.*, 614 F.3d 1173, 1179-80 (10th Cir. 2010), the court
explained that, in general, a party seeking attorney fees incurred in appellate proceedings must
present that claim to the Court of Appeals, and the District Courts lack jurisdiction to
independently award appellate fees.  However, *Flitton* recognized an exception that is applicable
here: "parties who prevail on interlocutory review in this court, and who subsequently become
prevailing parties under Title VII or another fee-shifting provision at the conclusion of merits
proceedings, are implicitly entitled to reasonable attorneys' fees related to the interlocutory
appeal."  Ms. Rodriguez both prevailed on her interlocutory appeal of the prior dismissal of this
action, and, after remand, proceeded to prevail on some of her claims at trial.  Accordingly, this
Court finds that Ms. Rodriguez is entitled to recover the fees expended on securing reversal of
the prior dismissal.

prove a case as to others. *See e.g. Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983) ("The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim"). However, the "partial success" inquiry examines the degree of interrelationship between the successful claim(s) and the unsuccessful ones. If the unsuccessful claims "involve a common core of facts" or are based "on related legal theories" to the successful claims, any reduction made for partial success should be minimal. *Id.* ("In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims"); *see also Flitton*, 614 F.3d at 1177 (10th Cir. 2010) (exclusion of fees expended on unsuccessful claim warranted where the claim "is distinct in all respects from his successful claims").

Here, although Ms. Rodriguez did not succeed on her claims of hostile environment harassment and sex discrimination, the claims arose out of the same common core of facts as Ms. Rodriguez's successful retaliation claim. The demonstration of this is evident in Wet Ink's motion to alter the judgment, in which Wet Ink argues that Ms. Rodriguez did not demonstrate that her complaints to Wet Ink were protected under Title VII. As discussed above, that issue required Ms. Rodriguez to address the facts that gave rise to her complaints to management, which necessarily involved developing a record of the acts she perceived to be sexual harassment – the very same acts that supported her hostile environment claim. Thus, the Court cannot say that Ms. Rodriguez's unsuccessful hostile environment claim was so factually and legally dissimilar from her successful retaliation claim that the Court should refuse compensation for

attorney time spent developing common factual and legal core issues.[10]  At most, Ms.

Rodriguez's lack of success on her hostile environment and disparate treatment claims requires

only a modest reduction in the hours she claims to excise time spent on matters exclusive to the

unsuccessful claims (*e.g.* jury instructions, evidence of non-economic damages relating to the

hostile environment).

Wet Ink also argues that the Court should significantly reduce Ms. Rodriguez's fee claim

because the fees are several times higher than the amount she recovered as damages.  This

appears to be an argument that the fee award should be "proportional" to the amount recovered,

an argument that the Supreme Court has unambiguously rejected.  *See e.g. City of Riverside v.

Rivera*, 477 U.S. 561, 574 (1986).[11]  As the court recently explained in *Anderson v. AB Painting

and Sandblasting, Inc.,* 578 F.3d 542, 545 (7th Cir. 2009), "[b]ecause Congress wants even small

violations of certain laws to be checked through private litigation and because litigation is

expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount

in controversy."  The magnitude of Ms. Rodriguez's recovery is certainly a factor that the Court

considers in determining whether the hours she expended were "reasonable," but the mere fact

that her damages were small relative to the fees she seeks is not grounds, of itself, to reduce the

lodestar calculation.

Although the Court finds that the total number of hours claimed by Ms. Rodriguez's

counsel are reasonable, particularly given the protracted pretrial proceedings, it is appropriate to

---

[10]      Arguably, had Wet Ink stipulated at trial that Ms. Rodriguez's complaints to management were protected activity, it might now have been able to argue that there was no need for Ms. Rodriguez to develop evidence of the alleged hostile environment as part of her retaliation claim.

[11]      Wet Ink's cites to *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998), for this proposition.  This Court finds *Migis* unpersuasive in that regard, as its focus on the fact that "these ratios [between amount damage award and fee award] are simply too large" seems to rely heavily on precisely the "proportionality" test that *Riverside* rejects.

reduce that total slightly to account for Ms. Rodriguez's lack of success on two of the three

claims she pursued to trial (as well as Wet Ink's partial success on summary judgment as to other

claims).

It is impossible for the Court to excise particular billing entries to accomplish this task,

and thus, the Court is left with making a wholesale reduction in the number of hours claimed by

Ms. Rodriguez.  Considering the entirety of the proceedings herein, the Court finds it appropriate

to reduce the number of hours claimed by Ms. Rodriguez by 15% in order to reflect her partial

success.  As noted above, a common core of factual issues (and, at least with regard to the

question of whether Ms. Rodriguez's complaints to Wet Ink were protected conduct, legal

questions as well) lay at the heart of all three of Ms. Rodriguez's claims, making a large

reduction in her claimed hours inappropriate.  At the same time, her unsuccessful claims did

cause her to put on evidence and address matters that would have been irrelevant had she

proceeded only on her successful retaliation claim.  For example, a substantial portion of Ms.

Rodriguez's testimony was devoted to establishing a basis for non-economic damages that she

suffered as a result of the ongoing hostile work environment; such damages were irrelevant to

her retaliation claim. Similarly, a considerable amount of Dallas Shelton's testimony about the

hostile environment she experienced could be considered irrelevant to Ms. Rodriguez's

retaliation claim.  A 15% wholesale reduction in the fees sought by Ms. Rodriguez would be

sufficient to excise time spent by Ms. Rodriguez's counsel pursuing issues that are utterly

irrelevant to the retaliation claim, while nevertheless ensuring that Ms. Rodriguez is adequately

compensated for time spent developing the common core of facts underlying all of her claims.

Accordingly, the Court finds that the reasonable fees incurred by Ms. Rodriguez in this matter were $ 103,129.65.  The Court sees no reason to modify that lodestar amount further. Therefore, Ms. Rodriguez's motion for attorney fees is granted in part, insofar as she is awarded $ 103,129.65 in fees pursuant to 42 U.S.C. § 1988.

## CONCLUSION

For the foregoing reasons, Ms. Rodriguez's Motion for Attorney Fees (**# 125**) is **GRANTED IN PART**, insofar as Ms. Rodriguez is awarded attorney fees in the amount of $ 103,129.65, and the judgment is **DEEMED AMENDED** to include this sum.  Wet Ink's Motion to Alter Judgment (**# 128**), Wet Ink's Motion to Vacate Punitive Damage Award (**# 129**), and Ms. Rodriguez's Motion for Post-Judgment Discovery (**# 135**) are all **DENIED**.

Dated this 27th day of January, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge